1
2
3                    UNITED STATES DISTRICT COURT
4                    NORTHERN DISTRICT OF CALIFORNIA
5
6
7
8   SILGAN CONTAINERS CORP.,
            Plaintiff,                      No. C 08-2246 PJH
9
        v.                                  **ORDER GRANTING SUMMARY**
10                                          **JUDGMENT IN PART AND DENYING**
    NATIONAL UNION FIRE INSURANCE           **SUMMARY JUDGMENT IN PART**
11  COMPANY OF PITTSBURGH, PA,
12          Defendant.
    _____/
13

14       The parties' cross-motions for partial summary judgment and plaintiff's motion to

15  strike came on for hearing before the court on January 21, 2010.  Plaintiff Silgan

16  Containers Corporation ("Silgan" or "plaintiff"), appeared through its counsel, Loren Kieve.

17  Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union" or

18  "defendant"), appeared through its counsel, Richard Nicolaides.  Having read all the papers

19  submitted and carefully considered the relevant legal authority, the court hereby GRANTS

20  defendant's motion and DENIES plaintiff's motion, for the reasons stated at the hearing,

21  and as follows.

22                              **BACKGROUND**

23       This action stems from an insurance dispute.  Silgan manufactures and sells steel

24  and aluminum containers with "pull-tab" lids.  These containers are used by processors and

25  packagers for food products.  See Joint Statement of Undisputed Facts ("SUF"), ¶ 44.  One

26  of Silgan's customers is Del Monte, and the two companies had a supply agreement in

27  place (dating back to 1993) that obligated plaintiff to provide 4 oz pull-tab fruit cups to Del

28  Monte, for its use in packaging ready to go fruit for consumers.  See id., ¶ 3.

United States District Court

For the Northern District of California

A.    Background Facts

During the relevant time period, Silgan supplied Del Monte with a number of batches of pull-tab cans that did not function properly.  Specifically, customers could not readily pull the tops off the cans, and Del Monte received increasing numbers of customer complaints about the issue.  Id., ¶¶ 5-9, Exs. 4-10.  Del Monte notified Silgan of the pull-tab failure rates on June 24, 2004, and then again in August 2004.  SUF, ¶¶ 7, 9, Exs. 4-5.  Del Monte ended up reporting a total of 272 complaints received during the month of July 2005, and 5,100 broken pull-tab complaints during the 2005 fiscal year as a whole.  See id., ¶¶ 12-13.

Silgan investigated the claims, and determined that various factors related to design and manufacture of the pull-tab lids were causing "openability" problems.  Id., ¶¶ 16, 20; Exs. 11, 15.

As a result, Del Monte informed Silgan in May 2005 that Del Monte planned to reject Silgan's products given the high failure rates, and Del Monte's inability to cost-effectively sort the good cans from the bad ones.  SUF, ¶ 25, Ex. 14.  As of August 14, 2006, Del Monte insisted that all remaining inventory be removed and disposed.  Id., ¶ 26, Ex. 18.  Del Monte subsequently disposed of the fruit cup products it rejected due to high defect rates.  Id., ¶ 29.

Del Monte sought to recover from Silgan the costs it had incurred as a result of the defective cans supplied by Silgan.  These costs initially included costs of fruit that was lost as a result of rejected products, the costs of sorting, and costs incurred by Del Monte's Chinese co-packers of mandarin oranges, since there was a delay in shipping non-defective cans to China, which required Del Monte to purchase more expensive "off season" mandarin oranges.  SUF, ¶ 30, Ex. 19.  All told, Del Monte's initial claim for damages totaled $6,532,081.20, which claim included the following breakdown of costs:

- $4,190,366.45 for the value of finished fruit cup products (pineapples, peaches, pears and mixed fruit) that were rejected, including the value of the

2

United States District Court

For the Northern District of California

1   fruit, value of the cans and related costs of packaging, manufacturing and/or

2   assembling such products;

3   • $790,803.08 for the value of finished fruit cup products that required special

4   handling (including the value of fruit, value of the cans, and costs of

5   packaging, manufacturing and/or assembly);

6   • $535,161.68 for the value of finished fruit cup products (cherry mixed fruit),

7   and related costs;

8   • $343,070.64 for costs incurred to inspect, gather, sort, and segregate fruit

9   cup products utilizing defective pull-tab tops, and costs incurred to process,

10   rework and dispose such products;

11   • $646,177.04 for China "reman premiums" – representing the price premiums

12   incurred by Del Monte due to the delay in re-shipping non-defective cans to

13   China and missing the opportunity to pack fresh mandarin oranges in China;

14   and

15   • $26,502.31 for consumer reimbursements.

16   See SUF, ¶ 31, Ex. 20.

17       A subsequent audit of Del Monte's damages claim, conducted by a third party

18   forensics firm hired by National Union, revealed that Del Monte's damages claim totaled

19   $6,500,956.27, and includes the following relevant break out of individual items:

20   • $1,811,881.67 for the cost of cans manufactured by Silgan and sold to Del

21   Monte

22   • $1,017,251.74 for the cost of fruit that was contained in the affected cans

23   • $1,404,776.21 in variable manufacturing costs (including costs incurred in

24   filling cans with fruit, labor, utilities, and packaging costs for labels and boxes)

25   • $10,522.98 in other variable costs, including the additional freight and

26   warehousing costs required to get replacement inventory into distribution

27   centers

28

3

**United States District Court**
For the Northern District of California

- • $276,356.17 in LIFO (last in, first out) adjustment
- • $964,417.51 in fixed overhead costs (rent, depreciation, labor, etc.)
- • $1,990.04 in unsupported cost (sorting and rework costs lacking support)
- • $341,080.60 in costs incurred in gathering defective fruit cups and in reworking and disposing of such products
- • $646,177.04 in China reman premiums (i.e., premiums incurred due to delay in re-shipping non-defective cans to China and missing the opportunity to pack fresh mandarin oranges)
- • $26,502.31 in consumer reimbursements paid to consumers in refunds and/or replacement products

See SUF, ¶ 33, Ex. 22.

In February 2005, August 2005, and May 2006, Del Monte unilaterally withheld payments otherwise owed to Silgan, in the amount of $6,456,037, in order to cover the amount of damages Del Monte was claiming. SUF, ¶ 48. This was a lower amount than Del Monte's initial claim, which totaled $6,532,081.20 and the audit claim, which totaled $6,500,956.27. SUF, ¶¶ 31, 33.

B.   Insurance Coverage

Silgan maintained two insurance policies that are relevant here. First, Silgan maintained a commercial general liability insurance policy issued by Zurich ("Zurich policy"), covering the period November 1, 2003 through November 1, 2004. SUF, ¶ 42, Ex. 24. The Zurich policy provided coverage up to $1.5 million dollars for certain qualifying events, subject to a $250,000 deductible. Id.

Second, defendant National Union also issued a commercial umbrella insurance policy to Silgan for the period November 1, 2003 to November 1, 2004 [i.e., the period during which the defective pull-tab cans were actually manufactured and supplied to Del Monte]. See SUF, ¶ 43, Ex. 25 ("National Union policy"). The National Union policy provides coverage, up to $25 million, for certain "occurrences" that cause "property

United States District Court

For the Northern District of California

damage" to Silgan, and covers only those sums in excess of a retained limit.  See id.

Silgan gave timely notice of Del Monte's fruit cup claim to both Zurich and National Union.  SUF, ¶ 49.  On August 1, 2007, Zurich informed Silgan's claim administrator that it would accept Del Monte's claim and pay the full $1.5 million limit of Zurich's primary coverage, less Silgan's $250,000 deductible.  Id., ¶ 46, Ex. 26.

National Union, for its part, retained a forensics accounting firm to audit Del Monte's claimed damages.  SUF, ¶ 33.  Based on the audit, it determined Del Monte's damages to be $6,500,956.27 – a figure slightly lower than Del Monte's stated claim for damages. SUF, ¶ 31.

National Union has, however, denied coverage of Silgan's claim, on grounds that there has been no "physical injury" to the fruit that was contained in the defective fruit cup containers.

C.   The National Union Policy

An overview of the relevant affirmative and exclusionary coverage provisions of the National Union policy is as follows:

1.   Coverage Provisions

The National Union policy provides that National Union will pay "those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay" because of "Property Damage... that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world."  See SUF, ex. 25 at § I.

"Property Damage" is in turn defined as: (1) "physical injury to tangible property, including all resulting loss of use to that property;" or (2) loss of use of tangible property that is not physically injured."  See id. at § IV(K).

"Occurrence" is defined as: "an accident, including continuous or repeated exposure to conditions, which results in ... Property Damage neither expected nor intended from the standpoint of the Insured."  See id. at § IV(H).

2.   Exclusions

5

1    The National Union policy also contains certain exclusions from coverage, three of

2  which are relevant to the parties' arguments here:  (1) the Impaired Property Exclusion

3  (exclusion E); (2) the Your Product Exclusion (Exclusion F); and (3) the Product Recall

4  Exclusion (Exclusion H).  See id. at § V.

5    Exclusion E excludes from coverage "any 'Property Damage' to 'Impaired Property'

6  that has not been physically injured, arising out of (1) a defect, deficiency inadequacy or

7  dangerous condition in Your Product...; or (2) a delay or failure by you or anyone acting on

8  your behalf to perform a contract or agreement in accordance with its terms."  Id. at § V(E).

9  "Impaired Property" is in turn defined as: "tangible property, other than Your Product... that

10  cannot be used or is less useful because: (1) it incorporates Your Product... that is known

11  or thought to be defective, deficient, inadequate or dangerous; or (2) You have failed to

12  fulfill the terms of a contract or agreement; if such property can be restored to use by...

13  [t]he repair, replacement, adjustment or removal of Your Product...".  SUF, ex. 25 at §

14  IV(D).

15    Exclusion F excludes from coverage "Property Damage to Your Product arising out

16  of it or any part of it."  Id. at § V(F).

17    Finally, Exclusion H excludes from coverage "damages claimed for any loss, cost or

18  expense incurred by you or other for the loss of use ...removal or disposal of: (1) Your

19  Product; (2) Your Work; or (3) Impaired Property if such... product [] or property is

20  withdrawn or recalled from the market or from use by any person or organization because

21  of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it."  Id.

22  at § V(H).

23  D.    The Instant Action

24    On April 30, 2008, Silgan filed the instant action against National Union (and a

25  subsequent amended complaint) alleging six causes of action:  (1) breach of duty to

26  investigate; (2) breach of duty to pay; (3) breach of duty of good faith and fair dealing; (4)

27  breach of California Insurance Code § 790.03; (5) breach of duty to pay (as to Zurich only);

28

6

United States District Court

For the Northern District of California

and (6) declaratory judgment.  See generally Amended Complaint.  Silgan seeks

$4,679,074.60 in damages for its unpaid claim.[1]

The parties have now filed cross-motions for partial summary judgment.  While

initially unclear from the parties' papers which causes of action are at issue for purposes of

the motions, at the hearing on the motions the parties clarified that they specifically seek

summary judgment with respect to the second claim for relief alleging contractual breach of

the duty to pay, and in addition, the fourth claim for relief alleging declaratory judgment, to

the extent plaintiff seeks a declaration regarding defendant's breach of the duty to pay.

Also pending before the court are two related motions to strike: plaintiff's motion to

strike the testimony of Thomas Richmann, and defendant's motion to strike the testimony

of Christopher Nettleton.[2]

**DISCUSSION**

A.    Legal Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  FRCP 56(c).  Material facts are those which may affect the outcome of

the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to

a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

verdict for the nonmoving party.  Id.  The court must view the facts in the light most

favorable to the non-moving party and give it the benefit of all reasonable inferences to be

---

[1]    Silgan has discounted the $1.5 million payment by Zurich, its own $10,000 retention amount and another $311,881 for the excess cost of cans (which National Union's policy does not cover) from the original claim amount of $6,500,956 that National Union deemed to be the correct audited claim amount.

[2]    The court hereby DENIES both parties' motions to strike, as it finds that both the declaration submitted by Christopher Nettleton and the affidavit submitted by Thomas Richmann are admissible for purposes of the instant cross-motions.  Notwithstanding this ruling, however, the court furthermore notes that it need not rely on either the Nettleton declaration or the Richmann affidavit in order to resolve the instant motions.

United States District Court

For the Northern District of California

1   drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

2   587 (1986).

3        The party moving for summary judgment bears the initial burden of demonstrating

4   the absence of a genuine issue of fact for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317,

5   323 (1986).  When the moving party will have the burden of proof on an issue at trial, it

6   must affirmatively demonstrate that no reasonable trier of fact would find other than for the

7   moving party.  On an issue for which the nonmoving party will have the burden of proof at

8   trial, the moving party need only point out "that there is an absence of evidence to support

9   the nonmoving party's case."  Id.  Once the moving party satisfies its initial burden, the

10  nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set

11  forth specific facts showing that there is a genuine issue for trial."  FRCP 56(e).  If the

12  nonmoving party fails to make this showing, "the moving party is entitled to judgment as a

13  matter of law."  Celotex, 477 U.S. at 323.

14  B.   The Parties' Cross-Motions for Summary Judgment

15       Plaintiff's summary judgment motion seeks a ruling that National Union was required

16  to provide coverage under the National Union policy as a result of the damages incurred by

17  Del Monte, in the amount of $4,679,074.60.  National Union, for its part, seeks a contrary

18  judgment that it had no duty to provide coverage under its policy.  Resolution of the parties'

19  competing arguments ultimately requires analysis of the following issues:  (1) whether the

20  affirmative coverage provisions of National Union's policy provide coverage for Del Monte's

21  damages claim; (2) whether, if so, certain policy exclusions nonetheless operate to bar

22  coverage; and (3) whether, if no exclusions apply, the $1,500,00 retained limit set forth in

23  the policy was met, and policy coverage triggered, by properly recoverable damages under

24  the policy.

25       Preliminarily, however, the parties concede that there is no choice of law provision

26  contained within the National Union policy, but contend that the application of California law

27  is reasonable, given that Silgan's operations are based in California, and the majority of

28

8

United States District Court

For the Northern District of California

1   defective fruit cup lids were sold to Del Monte in California.  The court therefore applies

2   California law to the dispute in question, and furthermore notes that principles of California

3   contract interpretation – which apply to insurance contracts – also apply.  See, e.g.,

4   MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 647 (2003)(court should construe all

5   insurance provisions in their ordinary and popular sense, and should construe them to give

6   effect to the policy as a whole, if possible).

7        The court now turns to the merits of the substantive issues in dispute.

8        1.    Whether Coverage Applies under the National Union Policy

9        Silgan contends that the National Union policy covers Del Monte's claim for

10  damages, because the loss of fruit contained within the pull-tab cups is qualifying "property

11  damage" that National Union is obligated to cover.  Specifically, Silgan contends that,

12  consistent with the policy's definition of "property damage," the loss of fruit in the fruit cups

13  constitutes either "physical injury to tangible property, including all resulting loss of use to

14  that property" or "loss of use of tangible property that is not physically injured."  See SUF,

15  ex. 25 at § IV(K).  National Union, by contrast, asserts that any loss arose from Silgan's

16  breach of its supply contract with Del Monte, not from any physical injury to or loss of use

17  of fruit products.

18  The question to be resolved is therefore whether Del Monte's loss of fruit in the pull-

19  tab cups can be considered "physical injury to tangible property," or "loss of use of tangible

20  property" under the terms of the National Union policy, thereby triggering coverage in the

21  first instance.

22  Beginning with the former – i.e., whether the loss of Del Monte's fruit can constitute

23  "physical injury" to tangible property – plaintiff argues that the fruit contained within the

24  defective fruit cups is "tangible property" that was "physically" injured because the defective

25  pull tab lids, which were incorporated together with the fruit itself, rendered the fruit

26  commercially useless.  To that end, plaintiff relies on several cases that purport to establish

27  the proposition that 'physical injury to tangible property' – as that particular policy language

28

United States District Court

For the Northern District of California

1   is commonly understood – occurs whenever the incorporation of a defective product,

2   through physical contact or physical linkage, renders a larger product potentially

3   dangerous.  See, e.g., Eljer Mfg. Inc. v. Liberty Mut. Ins. Co., 972 F.2d 805, 812 (7th Cir.

4   1992); see also Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co., 45 Cal. App. 4th 1

5   (1996)(installation of asbestos-containing building materials in structure caused 'physical

6   injury' to structure); Shade Foods, Inc. v. Innovative Prods. Sales & Marketing, Inc., 78 Cal.

7   App. 4th 847 (2000)(wood-containing almonds sold to cereal manufacturer who used

8   almonds to make cereal caused physical injury to cereal); Watts Indus. Inc. v. Zurich Am.

9   Ins. Co., 121 Cal. App. 4th 1029 (2004)(waterworks parts containing high amounts of lead

10  that leached into water system cause 'physical injury' to water system).

11       As defendant correctly notes, however, a similar view of the 'physical injury'

12  provision has been soundly rejected by at least one California appellate court, in F & H

13  Const. v. ITT Hartford Ins. Co. of Midwest,118 Cal. App. 4th 364 (2004).  In F & H the court

14  stated that, where property damage is defined in a policy as "physical injury to tangible

15  property," the "mere incorporation of a defective but functioning [product] that might fail in

16  the future [does] not constitute 'property damage.'"  See id. at 376.  Rather, "physical injury"

17  should be given its plain meaning, and should connote "damage to tangible property

18  causing an alteration in appearance, shape, color or in other material dimension."  Id.  To

19  that end, and in considering under the facts before it whether certain lower grade pile caps

20  that were welded to driven piles constituted 'physical injury to tangible property' (where the

21  only injury shown was the welded structure's failure to perform as intended), the F&H court

22  held that no physical injury was stated under the policy at issue.  Id.

23       The court finds this reasoning persuasive here.  The parties do not dispute that there

24  was no actual physical damage to the fruit itself (as a result of Silgan's faulty pull-tab lids)

25  that caused an alteration in appearance, shape, color, or other material dimension.  See

26  SUF, ¶¶ 35-36.  As such, the only injury being asserted and/or proven here is the failure of

27  Silgan's cans to perform as intended.  Under the plain meaning that should be given the

28

United States District Court

For the Northern District of California

phrase "physical injury" under the foregoing case law, the asserted damage to Del Monte's fruit does not therefore qualify as "physical injury to tangible property" under the National Union policy.

Moreover, while plaintiff's cited "incorporation" cases do suggest that 'physical injury to tangible property' *can* occur where one product contaminates a larger product, or somehow critically affects it, those cases are further distinguished by the fact that each involved a hazardous contaminant.  Indeed, as defendant points out, California district court cases have subsequently noted that Watts, and it precursor cases, involved "a unique line of cases involving inherently dangerous products that damage the host product by the mere fact of incorporation."  See Semtech Corp. v. Royal Ins. Co. of Am., 2005 WL 6192907, *7 (C.D. Cal. 2005).  This is simply not the case here, where the only potential 'contaminant' is a defective pull-top lid.  And while plaintiff asserts that the defective pull-tops had the "clear potential to cause bodily injury," there is no evidence actually demonstrating this to be the case – only one or two generic complaints that children could not easily open the cans or that "someone could get hurt."  See SUF, ¶¶ 10-11.

In sum, the case at bar implicates no inherently dangerous product incorporated into another, nor did it give rise to any alteration in appearance, shape, or color of Del Monte's fruit, or in other material dimension.  Accordingly, the court concludes that, pursuant to the guidance provided by California case law, Del Monte's loss of fruit does not qualify as "tangible property" that was "physically" injured, within the meaning of the policy.

Plaintiff may yet, and does,[3] rely upon the second remaining definition of "Property Damage" – i.e., "loss of use of tangible property that is not physically injured" – for proof that Del Monte's loss of fruit is covered under the terms of the National Union policy.  Ultimately, however, plaintiff's arguments in this vein are also unavailing.

---

[3]    While plaintiff's moving and opposition briefs do not fully make clear that plaintiff intends to rely on the alternative "loss of use" provision to invoke coverage for "Property Damage" under the policy, plaintiff's counsel made clear at the hearing on the matter that plaintiff does, in fact, rely on this provision.

United States District Court

For the Northern District of California

1   The Ninth Circuit has relatively recently considered "loss of use" claims in the

2   context of policy language expressly defining "property damage" as that which includes

3   "loss of use of tangible property that is not physically injured," as is the case here.  See,

4   e.g., Sony Computer Entertainment America Inc. v. American Home Assur. Co., 532 F.3d

5   1007, 1018-19 (9th Cir. 2008).  In Sony Computer, the Ninth Circuit considered what it

6   deemed "classic 'loss of use'" claims and noted that such claims occur where "the insured's

7   defective property rendered the property of a third party unusable."  See id. at 1019.  See

8   also Anthem Elecs., Inc. v. Pac. Employers Ins. Co., 302 F.3d 1049, 1057 (9th Cir.2002)

9   (defective circuit boards inserted into scanners of third party plaintiff rendered scanners

10  unusable); Hendrickson v. Zurich American Ins. Co., 72 Cal. App. 4th 1084, 1091-92

11  (1999)(defective strawberry plants planted in fields caused loss of use of fields).  Because

12  the insured's defective property in Sony was not alleged to have rendered a third party's

13  discs wholly unusable, but merely unusable in conjunction with the insured's defective

14  property, no "loss of use" claim was implicated.  See Sony, 532 F.3d 1018-19.

15  Applying these "loss of use" guidelines here, defendant correctly notes that plaintiff

16  has failed to come forward with any undisputed facts firmly establishing that the fruit

17  contained within the defective pull-tab lid cups was completely "unusable."  To be sure,

18  plaintiff has demonstrated the undisputed fact that Del Monte did not want "to risk selling

19  the subject fruit cups to the public" because of the high rate of pull-tab lid failures, and that

20  Del Monte determined "that the cost of attempting to salvage the fruit packaged within the

21  pull-tab lid cans by repacking it in new, non-defective cans would exceed the value of the

22  fruit."  See SUF, ¶¶ 37-38.  Notwithstanding these testaments to the exercise of Del

23  Monte's business judgment, however, the court is unpersuaded that these facts suffice to

24  establish that the fruit itself was *unusable.*  This is particularly true, given that it *is*

25  undisputed, as noted above, that the fruit itself did not appear altered or injured in any way.

26  Id. at ¶ 35.

27  Accordingly, without proof that the fruit itself was unusable, rather than proof that Del

28

United States District Court

For the Northern District of California

1  Monte made a business decision not to expend money on re-packaging the cans, plaintiff

2  has not satisfactorily discharged its burden to establish that Del Monte lost use of its

3  tangible property, such that qualifying "Property Damage" under the National Union Policy

4  occurred.

5        In sum, plaintiff has failed to demonstrate that Del Monte's loss of fruit constitutes

6  either "physical injury to tangible property" or "loss of use of tangible property that is not

7  physically injured."  Accordingly, National Union's duty to pay for Del Monte's loss of fruit in

8  connection with Silgan's defective pull-tab lids is not triggered by the terms of the National

9  Union policy.  Defendant's motion for summary judgment as to plaintiff's breach of duty to

10  pay is therefore GRANTED, and plaintiff's cross-motion as to the same cause of action is

11  DENIED.

12        2.    <u>Exclusions</u>

13        Although the foregoing discussion effectively ends the inquiry regarding National

14  Union's duty to pay under the policy, the court finds it worthwhile to briefly consider the

15  parties' subsequent arguments regarding the applicability of any exclusions from coverage

16  (in the event that the court were to find that coverage exists), and to note that two of the

17  three exclusions relied upon by defendant would nonetheless likely bar at least certain

18  portions of plaintiff's claim from coverage.  <u>See</u> SUF, Ex. 25 at § V(F, H).

19        First, as noted above, Exclusion F excludes from coverage any "Property Damage to

20  Your product arising out of it or any part of it."  <u>See</u> SUF, Ex. 25 at § V(F).  As defendant

21  notes, courts applying California law have held that this exclusion bars coverage for

22  damage to the insured's own product and any damages incidental to the product's failure,

23  such as the cost of replacing the insured's product itself.  <u>See, e.g., Golden Eagle Ins. Co.</u>,

24  103 F. 3d 750, 757 (9th Cir. 1996)("an insured's faulty workmanship is not "property

25  damage" under California law").  Defendant is thus correct that this exclusion eliminates

26  coverage for any portion of Del Monte's claim that seeks recovery of damages

27  corresponding to the cost of Silgan's defective cans themselves (or the cost of replacing

28

United States District Court

For the Northern District of California

1   the cans).

2       Plaintiff, moreover, does not appear to dispute this, as it has not offered any

3   argument in opposition to application of this particular exclusion, and concedes in its own

4   opening brief that it is not seeking damages based on the cost of its own cans.  The

5   amount of such cans is $1,811,881.67.  Thus, to the extent that defendant seeks a

6   judgment that plaintiff should be precluded from recovering approximately$1.8 million

7   amount of can costs based on Exclusion F, defendant's motion is well-taken.

8       Second, defendant correctly contends that $341, 080.60 worth of costs that were

9   incurred in inspecting, gathering, sorting and segregating fruit cups that contained defective

10  pull-tab lids, are also precluded from coverage pursuant to Exclusion H.  Exclusion H, as

11  noted above, precludes coverage for: "damages claimed for any loss, cost or expense

12  incurred by you or others for the loss of use ...removal or disposal of: (1) Your Product; (2)

13  Your Work; or (3) Impaired Property... if such... Property is withdrawn or recalled from the

14  market or from use by any person or organization because of a known or suspected defect,

15  deficiency, inadequacy, or dangerous condition in it."

16      While plaintiff's argument in opposition to defendant is less than clear, defendant's

17  reasoning is persuasive.  For as it notes, the exclusionary provision's own wording applies

18  to costs incurred for the loss of use, withdrawal, recall, inspection, repair, and replacement,

19  etc. of the insured's own product (i.e., here, the defective pull-tab lids), where the product is

20  withdrawn or recalled from the market or from use because of a known or suspected

21  defect.  Accordingly, the amount of costs incurred to segregate and dispose the fruit cups

22  with defective tabs, must be excluded from coverage.

23      In sum, the court concludes that, even in the event it were to find the affirmative

24  coverage provisions of the policy triggered by Del Monte's claim stemming from its loss of

25  fruit, Exclusions F and H would nonetheless apply to preclude coverage for those damages

26  amounts falling within the scope of those exclusions.  Consistent with this conclusion,

27  defendant's motion for partial summary judgment with respect to both exclusionary

28

14

provisions is GRANTED.  To the extent plaintiff's cross-motion addresses the same exclusions, plaintiff's motion is DENIED.

>    3.    Exhaustion/Damages Issues

In view of the foregoing rulings, and because the parties' positions are less than clear, the court declines to reach the parties' remaining arguments regarding the specific amount of damages that could properly be claimed under the policy.

C.    Conclusion

For the foregoing reasons, the court accordingly GRANTS defendant's motion for partial summary judgment as stated herein, and DENIES plaintiff's cross-motion for partial summary judgment.

The parties shall appear at a further case management conference on April 15, 2010, at 2:00 p.m.  A joint case management statement must be filed one week in advance of the conference, containing a proposal for the resolution of the issues remaining in this case.

**IT IS SO ORDERED.**

Dated: March 29, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge